FLYNN, J.
**539 In this appeal from a decision of the Oregon Tax Court, taxpayer challenges the Tax Court's construction of the statutory formula by which Oregon calculates the portion of an interstate broadcaster's income that is taxable by Oregon. See ORS 314.680 to 314.690.[1] Based in part on those statutes, the Oregon Department of Revenue calculated that taxpayer had underpaid Oregon taxes for the tax years 2007-2009 and sent notices of deficiency, which taxpayer appealed to the Tax Court. The Tax Court agreed with the department's construction of the income-apportionment statutes and granted the department partial summary judgment on that part of taxpayer's appeal. Comcast Corp. v. Dept. of Rev. (TC 5265) , 22 OTR 295, 2016 WL 5938297 (2016). The Tax Court also entered a limited judgment to permit this appeal. We conclude that the Tax Court correctly construed the statutes that govern income-apportionment for interstate broadcasters, and we affirm the limited judgment.
I. LEGAL OVERVIEW
Before discussing the parties' arguments in more detail, we briefly describe the pertinent legal framework. Oregon, like most states that tax a portion of the income of multistate businesses, has adopted a formula for doing so that is derived from a uniform law-the Uniform Division of Income for Tax Purposes Act (UDITPA).[2] Health Net, Inc. v. Dept. of Rev. , 362 Or. 700, 704-06, 415 P.3d 1034 (2018).[3]
**540 Since 2005, Oregon's income-apportionment formula for interstate businesses has been based exclusively on what is referred to as the business's "sales factor." Id . at 707, 415 P.3d 1034 (citing Or. Laws 2005, ch. 832, § 49). In general, the Oregon *708 "sales factor" for a multistate-business taxpayer is the fraction representing the taxpayer's "total sales"[4] in Oregon during the tax period-the numerator-divided by "the total sales of the taxpayer everywhere during the tax period"-the denominator. ORS 314.665(1). For example, if a taxpayer has $10 million in total sales in a tax year, and $1 million of those are in Oregon, then the taxpayer's sales factor is $1 million in local sales divided by the $10 million in total sales, or 1/10. That would be the fraction of the taxpayer's total income that would be taxed by Oregon.
In 1989, however, the legislature created a special sales factor for any business that qualifies as an "interstate broadcaster," meaning "a taxpayer that engages in the for-profit business of broadcasting to subscribers or to an audience located both within and without this state." ORS 314.680(3) (definition of "interstate broadcaster"); ORS 314.684 (specifying sales factor for an "interstate broadcaster"); Or. Laws 1989, ch. 792. For an interstate broadcaster, determining the numerator of the sales-factor fraction-the Oregon portion-requires a different calculation: the taxpayer's "gross receipts from broadcasting" are "included in the numerator of the sales factor in the ratio that the interstate broadcaster's audience or subscribers located in this state bears to its total audience and subscribers located both within and without this state." ORS 314.684(4). In other words, for an interstate business that engages in "broadcasting" to an audience that is in part located in Oregon, the ratio of the broadcaster's Oregon audience to the broadcaster's total audience determines the portion of the taxpayer's "gross receipts from broadcasting" that is attributable to Oregon for income tax purposes. For example, if 1/20th of the broadcaster's total audience (or subscribers) live in Oregon, then 1/20th of the broadcaster's **541 total "gross receipts from broadcasting" are counted as gross receipts attributed to Oregon and included in the numerator of the sales-factor fraction.
II. PROCEDURAL BACKGROUND
The dispute between the parties in this court narrowly focuses on the question of what is included in the "gross receipts from broadcasting" to which the Oregon audience ratio is applied. Taxpayer does not dispute that it engages in "broadcasting" or that its income is apportioned to Oregon-at least in part-using the special "sales factor" formula specified in ORS 314.684 for "interstate broadcasters."[5] However, taxpayer contends that most of its receipts for the disputed tax years arose from activity that does not qualify as "broadcasting," a term defined to mean "the activity of transmitting any one-way electronic signal." ORS 314.680(1). According to taxpayer, only receipts from its activity that qualifies as "broadcasting" should have been attributed to Oregon under the audience-ratio formula of ORS 314.684.
The department counters, however, that the audience-ratio formula of ORS 314.684 is used to determine the Oregon portion of taxpayer's "gross receipts from broadcasting" and that the term is specifically defined to mean "all gross receipts of an interstate broadcaster from transactions and activities in the regular course of its trade or business," with a few unrelated exceptions, ORS 314.680(2). The department understands that definition of "gross receipts from broadcasting" to include a broader category of receipts than simply receipts from "broadcasting" activity and, thus, maintains that it correctly counted taxpayer's receipts from both "broadcasting" and other business activities in the category of "gross receipts from broadcasting" that are attributable to Oregon under the audience-ratio formula specified in ORS 314.684.
That issue of statutory construction was a focus of motions for partial summary judgment that both parties filed in the Tax Court. Taxpayer asked the court to determine **542 that only its receipts from "broadcasting" activity should be apportioned under *709 ORS 314.684, and that its revenue from other business activities must be apportioned according to the general apportionment formula of ORS 314.665. The Tax Court rejected that hybrid approach to apportionment. Comcast Corp., 22 OTR at 298. The court agreed with the department that, as a statutory matter, taxpayer's receipts from both "broadcasting" and other business activity fall within the definition of "gross receipts from broadcasting" and are attributed to Oregon under the formula described in ORS 314.684. 22 OTR at 299. The Tax Court, accordingly, denied taxpayer's motion for partial summary judgment, granted the department's motion, and entered a limited judgment. Taxpayer has appealed from that limited judgment.
III. DISCUSSION
In general, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See TCR 47 C (standard for granting summary judgment in Tax Court); Tektronix, Inc. v. Dept. of Rev. , 354 Or. 531, 533, 316 P.3d 276 (2013) (applying that standard on appeal from Tax Court decision). On appeal, taxpayer does not assert that there is any genuine issue of material fact, but taxpayer renews its statutory argument that only its receipts from one-way electronic transmissions qualify as "gross receipts from broadcasting" for purposes of determining its sales factor under ORS 314.684. In determining the meaning of that statute, as with all statutes, we "pursue the intention of the legislature if possible." ORS 174.020(1)(a). Because it is "the intent of the legislature as formally enacted into law" that we seek to determine, we give "primary weight in the analysis" to text and context, but we also consider legislative history "where that legislative history appears useful to the court's analysis." State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009).
A. "Gross Receipts from Broadcasting"-Text and Context
The disputed statute specifies in its entirety:
"(1) The sales factor for an interstate broadcaster shall be determined as provided in this section.
**543 "(2) The denominator of the sales factor shall include the total gross receipts derived by the interstate broadcaster from transactions and activities in the regular course of its trade or business, except receipts excluded under rules of the Department of Revenue.
"(3) The numerator of the sales factor shall include all gross receipts attributable to this state, with gross receipts from broadcasting to be included as specified in subsection (4) of this section.
"(4) Gross receipts from broadcasting of an interstate broadcaster which engages in income-producing activity in this state shall be included in the numerator of the sales factor in the ratio that the interstate broadcaster's audience or subscribers located in this state bears to its total audience and subscribers located both within and without this state."
ORS 314.684. For purposes of that formula, the legislature has defined what it means by "gross receipts from broadcasting," the phrase on which the dispute turns:
" 'Gross receipts from broadcasting' means all gross receipts of an interstate broadcaster from transactions and activities in the regular course of its trade or business except receipts from sales of real or tangible personal property."
ORS 314.680(2).[6]
The text of that statutory definition does not describe "gross receipts from broadcasting" as limited to receipts from activity consisting of "broadcasting." Rather, the phrasing-both the definition and its exceptions-broadly incorporates "all gross receipts of an interstate broadcaster," subject to only two limits: (1) the receipts must be "from transactions and activities in the regular course of its trade or business" and (2) the receipts must not be from the sale of real property or tangible personal property. ORS 314.680(2) (emphasis added).
*710 Nevertheless, taxpayer emphasizes that "broadcasting" is also a defined term and, moreover, is defined **544 narrowly to mean "the activity of transmitting any one-way electronic signal by radio waves, microwaves, wires, coaxial cables, wave guides or other conduits of communications." ORS 314.680(1). In other words, taxpayer highlights what may be an incongruity: if the Tax Court's construction of the statute is correct, then the legislature has defined "gross receipts from broadcasting" as including more than just gross receipts from "broadcasting." However, that seeming incongruity is not, itself, a reason to disregard the legislature's definition of "gross receipts from broadcasting" if it is the result that the legislature intended. As we have emphasized, "[w]hen the legislature provides a definition of a statutory term, we of course use that definition." Comcast Corp. v. Dept. of Rev. , 356 Or. 282, 295, 337 P.3d 768 (2014).
Taxpayer also emphasizes, however, that "gross receipts from broadcasting" is limited to those receipts "from transactions and activities in the regular course of [the interstate broadcaster's] trade or business" and that an "interstate broadcaster" is a "taxpayer that engages in the for-profit business of broadcasting." ORS 314.680(2), (3). Thus, taxpayer argues, "transactions and activities in the regular course of [an interstate broadcaster's] trade or business" should mean only "transactions and activities" that consist of the business of "broadcasting." According to taxpayer, only those receipts from transmitting a one-way electronic signal are properly considered "gross receipts from broadcasting." Taxpayer's narrow construction of the term "gross receipts from broadcasting" is textually plausible, but several contextual cues persuade us that the legislature did not intend to limit the term to receipts from the taxpayer's "transactions and activities" that consist of "transmitting any one-way electronic signal" if the taxpayer engages in other activities in the regular course of its trade or business.
The first contextual cue is that the sales factor described in ORS 314.684 is directed to a class of taxpayers, rather than to a class of income-generating activity. The first paragraph of that statute provides that "[t]he sales factor for an interstate broadcaster shall be determined as provided in this section," ORS 314.684(1), and an "interstate broadcaster" is "a taxpayer that engages in the for-profit business of broadcasting." ORS 314.680(3). The statutes do not **545 provide that "the sales factor for income derived from broadcasting shall be determined" under ORS 314.684 or that a taxpayer is an "interstate broadcaster * * * to the extent it engages in the for-profit business of broadcasting." Nor does ORS 314.684 direct interstate broadcasters to calculate a secondary sales factor pursuant to the general formula of ORS 314.665. Yet taxpayer's proposed construction of the statutes would require this court to insert similar provisions, contrary to the legislature's directive that, in construing statutes, courts are to "ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted." See ORS 174.010.
Another contextual cue is that the legislature defined "gross receipts from broadcasting" in a way that suggests the legislature understood the term to include more than just receipts from the activity of transmitting a one-way signal. The definition of "gross receipts from broadcasting" expressly excludes "receipts from sales of real or tangible personal property." ORS 314.680(2). Receipts from the activity of selling property, however, are not receipts from the activity of transmitting a one-way signal. If taxpayer were correct that "gross receipts from broadcasting" included only receipts from the activity of transmitting a one-way electronic signal, then it would have been unnecessary for the legislature to expressly exclude receipts from the selling of property.
In general, we "assume that the legislature did not intend any portion of its enactments to be meaningless surplusage." State v. Clemente-Perez , 357 Or. 745, 755, 359 P.3d 232 (2015). Indeed, the legislature has directed that, where a statute contains "several provisions or particulars," courts should construe the statute in a way that "will give effect to all." ORS 174.010. That taxpayer's construction of ORS 314.680(3)
*711 would render redundant the provision that excludes property sales from the definition of "gross receipts from broadcasting" is another indication that the legislature intended the category "gross receipts from broadcasting" to have a reach broad enough to include more than just receipts from the activity of "broadcasting."
**546 A final contextual challenge for taxpayer's construction of "transactions and activities in the regular course of [the interstate broadcaster's] trade or business" arises because the legislature used the same phrase to describe the contents of the denominator of the sales factor described in ORS 314.684. As explained above, a taxpayer's sales factor is a fraction, and, for interstate broadcasters, ORS 314.684(2) specifies, "[t]he denominator of the sales factor shall include the total gross receipts derived by the interstate broadcaster from transactions and activities in the regular course of its trade or business " (emphasis added)-the same phrase that the legislature used in defining "gross receipts from broadcasting. (Emphasis added.) We ordinarily presume that the legislature intended words enacted as part of the same statute to have the same meaning throughout that statute. See Village at Main Street, Phase II v. Dept. of Rev. , 356 Or. 164, 175, 339 P.3d 428 (2014) ("[T]he general assumption of consistency counsels us to assume that the legislature intended the same word to have the same meaning throughout related statutes unless something in the text or context of the statute suggests a contrary intention."). No text or context here provides a reason to depart from that general rule of construction, so we presume that the legislature intended the phrase "transactions and activities in the regular course of [the interstate broadcaster's] trade or business" to have the same meaning when used in ORS 314.684 to describe the denominator as when used in ORS 314.680 as part of the definition of "gross receipts from broadcasting."
If the phrase "transactions and activities in the regular course of [the interstate broadcaster's] trade or business" has the narrow meaning proposed by taxpayer, however, then there would be a significant misalignment between the receipts counted in the prescribed denominator of the sales-factor fraction and the receipts counted in the prescribed numerator-because the numerator broadly includes "all gross receipts attributable to this state," ORS 314.684(3). The resulting sales factor could alter an interstate broadcaster's tax-apportionment formula in a way that taxpayer undoubtedly would not wish and that the legislature is unlikely to have intended.
**547 The misalignment is best illustrated by examining how a broadcaster's sales factor would be calculated under taxpayer's construction of ORS 314.684. For example, assume a broadcaster has three categories of gross receipts:
• Gross receipts from the activity of "broadcasting" ("Category A activity");
• Gross receipts from other business activities that are not "broadcasting" but would fit the Tax Court's broad construction of the term "gross receipts from broadcasting," e.g. , two-way electronic transmissions ("Category B activity"); and
• Gross receipts from business activities that are expressly excluded from the statutory definition of "gross receipts from broadcasting," e.g. , sales of tangible personal property ("Category C activity").
If, as taxpayer contends, an interstate broadcaster's gross receipts from "transactions and activities in the regular course of its trade or business" are only receipts from the activity of "broadcasting" (Category A activity), then the same narrow meaning would, similarly, limit the denominator of the broadcaster's sales-factor fraction to: "total gross receipts [from the activity of 'broadcasting']" (Category A activity). The numerator, however, includes "all gross receipts attributable to this state" and, therefore, would include: gross receipts from Category A activity-in the ratio that the Oregon audience bears to total audience-PLUS the share of gross receipts from the Category B and Category C activities that are "attributable to this state." ORS 314.684(3), (4).
*712 Thus, assuming an Oregon-audience ratio of 1/10, the sales factor under taxpayer's construction of ORS 314.684 would be:
(gross receipts from Category A activity)/10
+ (receipts attributable to Oregon from Category B activity)
+ (receipts attributable to Oregon from Category C activity)
(total gross receipts from Category A activity)
**548 The more receipts a taxpayer earns from business activity other than "broadcasting" activity, i.e. , other than from Category A activity, the more top-heavy the sales factor would become, and the greater the portion of the taxpayer's income that would be taxed by Oregon.
Although ORS 314.684(2) does not expressly preclude adding other gross receipts to the denominator, the text directs only that the denominator includes receipts "from transactions and activities in the regular course of [the interstate broadcaster's] trade or business." If, as taxpayer contends, the legislature intended "transactions and activities in the regular course of [a broadcaster's] trade or business" to include only transactions and activities consisting of "broadcasting," then the failure to specify that receipts from other business activity should also be included in the denominator of the ORS 314.684 sales factor would be a significant omission. More plausibly, it is not an omission at all; more plausibly, the legislature saw no need to specify that the denominator of the interstate broadcaster sales factor includes receipts from business activity other than "broadcasting" because the legislature understood that the category of gross receipts "from transactions and activities in the regular course of [a broadcaster's] trade or business" was broad enough to already include receipts from activity other than "broadcasting."
B. Legislative History
Nothing in the legislative history of ORS 314.680 to 314.684 discloses a legislative intent to apportion the receipts of an interstate broadcaster in a manner different from that suggested by the text and context of those statutes. The special sales-factor formula for interstate broadcasters became law in 1989, when the legislature adopted House Bill (HB) 2226. Or. Laws 1989, ch. 792. Taxpayer has cited legislative history indicating that the 1989 legislature intended to change the method by which an interstate broadcaster's receipts would be attributed to Oregon to a formula based on the broadcaster's Oregon-audience ratio. See Tape Recording, Senate Committee on Revenue and School Finance, HB 2226, June 12, 1989, Tape 189, Side A (statement of James N. Gardner, Oregon Association **549 of Broadcasters) (explaining, "[i]n a nutshell what this bill does is to create a sales factor apportionment tool that consists of audience"); Tape Recording, Senate Committee on Revenue and School Finance, HB 2226, June 12, 1989, Tape 189, Side A (statement of Richard Yates, Legislative Revenue Office) (explaining that bill would substitute "the ratio of the Oregon audience to the everywhere audience as a measure of sales and use that in the apportionment formula").
Nothing in the history, however, provides a basis for concluding that the legislature intended that the new audience-ratio formula for attributing a broadcaster's receipts to Oregon would be used for only part of a broadcaster's receipts. Rather, the history indicates that the legislature, in specifying that the audience-ratio formula would apply to "gross receipts from broadcasting," intended that phrase to "broad[ly] *** include all receipts essentially." Tape Recording, Senate Committee on Revenue and School Finance, HB 2226, June 12, 1989, Tape 190, Side A (statement of Richard Yates); see Tape Recording, House Committee on Revenue and School Finance, HB 2226, May 15, 1989, Tape 144, Side B (statement of Rep Carl Hosticka, Chair) (emphasizing that amendments, which the committee was about to vote to adopt, would "expand the definition of what is covered from in gross receipts and says all transactions and activities rather than advertisement").[7] Thus, the legislative *713 history provides no basis for concluding that the legislature intended ORS 314.684 to be construed differently than the construction to which our examination of text and context points. **550 C. The "Absurd Result" Maxim
Finally, taxpayer contends that the Tax Court's broad construction of "gross receipts from broadcasting" will lead to what taxpayer views as absurd results-that when a taxpayer engages to any extent in "broadcasting," receipts from the taxpayer's business activity other than "broadcasting" will be attributed to Oregon under a ratio that is based on Oregon's share of the taxpayer's broadcasting audience.[8] We are not persuaded that such a result would be absurd, but, in any event, taxpayer's argument misapprehends the role of the "absurd result" maxim of statutory construction. As this court has explained, "[t]hat maxim is best suited for helping the court to determine which of two or more plausible meanings the legislature intended" when one meaning "would lead to an absurd result that is inconsistent with the apparent policy of the legislation as a whole." State v. Vasquez-Rubio , 323 Or. 275, 282-83, 917 P.2d 494 (1996). We cautioned that, "[w]hen the legislative intent is clear from an inquiry into text and context, or from resort to legislative history, *** it would be inappropriate to apply the absurd-result maxim" because "we would be rewriting a clear statute based solely on our conjecture that the legislature could not have intended a particular result." Id. at 283, 917 P.2d 494 (footnote omitted). Although taxpayer views as absurd a rule that attributes to Oregon both "broadcasting" and non-broadcasting receipts of a broadcaster according to the audience-ratio formula, we have concluded from our examination of text, context, and legislative history that the legislature intended precisely that result. Taxpayer's criticism of that result as "absurd" provides no basis for disregarding the legislature's policy choice.[9]
**551 IV. CONCLUSION
The Tax Court correctly concluded that, in calculating the "sales factor" by which an interstate broadcaster's receipts are attributed to Oregon, "all gross receipts of [the broadcaster] from transactions and activities in the regular course of its trade or business"-not solely receipts from "broadcasting" activities-are "included in the numerator of the sales factor in the ratio" that the broadcaster's Oregon audience bears to its total audience. ORS 314.680(2) ; ORS 314.684(4). The only exception is the broadcaster's receipts from the sales of real property or tangible personal property, which are included in the numerator if attributable to Oregon but are not governed by the audience-ratio formula. See ORS 314.680(2).
*714 The limited judgment of the Tax Court is affirmed.

Except as otherwise indicated, all statutory references are to the version of those statutes that is applicable to the 2007-2009 tax years. The text of ORS 314.680 to 314.690 remained unchanged from 1995 until amendments in 2014.

Oregon's version of UDITPA is codified at ORS 314.605 to 314.675.

Multistate business enterprises present special challenges for states that impose an income-based tax on businesses. Compare Northwestern Cement Co. v. Minn. , 358 U.S. 450, 452, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959) (holding that neither the Commerce Clause nor the Due Process Clause of United States Constitution prevent states from taxing net income of an interstate business that is "earned from and fairly apportioned to business activities within the taxing State") with Container Corp. v. Franchise Tax Bd. , 463 U.S. 159, 164, 103 S.Ct. 2933, 77 L.Ed.2d 545, reh'g den. , 464 U.S. 909, 104 S.Ct. 265, 78 L.Ed.2d 248 (1983) (explaining that both the Due Process and the Commerce Clauses prevent a state from imposing an income-based tax on "value earned outside its borders" (internal quotation marks and citation omitted), but that "arriving at precise territorial allocations of 'value' is often an elusive goal, both in theory and in practice"). Taxpayer's arguments in this court, however, do not raise any constitutional challenges to Oregon's formula for apportioning the income of interstate broadcasters.

A taxpayer's "sales" means the taxpayer's "gross receipts," subject to certain exceptions. ORS 314.610(7) ; ORS 315.665(6).

The Tax Court concluded that taxpayer meets the definition of an "interstate broadcaster" because "it engages in some" activity that is "broadcasting." 22 OTR at 299. Taxpayer does not challenge that determination on appeal.

The definitions in ORS 314.680 apply to the terms "[a]s used in ORS 314.680 to 314.690, unless the context requires otherwise." ORS 314.680.

After HB 2226 was initially introduced without using the term "gross receipts from broadcasting," the Oregon Association of Broadcasters proposed amendments that would have added the term and defined it to mean "gross receipts from advertisements which are attributable to broadcasting." Exhibit 2, House Revenue and School Finance Committee, HB 2226, April 20, 1989. After an "informal conference" involving representatives of the Department of Revenue and the Oregon Association of Broadcasters, the proposed amendment was, itself, amended-to essentially the same "expand[ed]" definition that would later be enacted by the legislature. See Tape Recording, House Committee on Revenue and School Finance, HB 2226, May 15, 1989, Tape 143, Side A (statement of James N. Gardner); id ., Tape 143, Side B (statements of Chair Hosticka and Rep Bruce Hugo); HB 2226 (1989), A-Engrossed (printed May 30, 1989).

To the extent that taxpayer perceives the statutory formula as potentially resulting in apportionment that does not fairly reflect the portion of a broadcaster's income that is attributable to business in Oregon, we emphasize that taxpayer has raised no constitutional challenge to the apportionment statutes.
We add that the risk of that result may be tempered by ORS 314.686, which specifies that the department must determine a broadcaster's "net income taxable by this state *** based upon the business activity within this state," and to require a method of reporting, "under the rules adopted by the department, so as fairly and accurately to reflect the net income of the interstate broadcaster's business done within this state."

Taxpayer also appears to argue that it is an "absurd result" if the sales of businesses such as "telephone companies, cell phone service providers, providers of music and online video services, Internet service providers, alarm companies, financial institutions and more" are apportioned under the "interstate broadcaster" formula of ORS 314.684. But taxpayer does not challenge, here, the Tax Court's conclusion about when a business is an "interstate broadcaster" subject to ORS 314.684, so the meaning of that term is beyond the scope of this appeal.