Ashley SCHUTZ, Respondent on Review, v. LA COSTITA III, INC., Defendant, and O'Brien Constructors, LLC, and Keeley O'Brien, Petitioners on Review.
J. Randolph Pickett, Pickett Dummigan McCall LLP, Portland, argued the cause and filed the brief for respondent on review. Also on the brief were Kristen W. McCall, Kimberly O. Weingart, and Ron K. Cheng.
Before Walters, Chief Justice, and Balmer, Nakamoto, Flynn, Duncan, Nelson, and Garrett, Justices.**
**538 Plaintiff brought a civil action for negligence against her employer and its agent, alleging that she had been seriously injured in an auto accident after she was pressured to attend a work-related event where she had become intoxicated. The trial court granted summary judgment for the defendants, concluding that they were entitled to statutory immunity under ORS 471.565(1) and that that grant of immunity did not violate the remedy clause of Article I, section 10, of the Oregon Constitution. The Court of Appeals disagreed with the trial court's remedy clause analysis and reversed. Schutz v. La Costita III, Inc. , 288 Or. App. 476, 406 P.3d 66 (2017), rev. allowed , 362 Or. 794, 416 P.3d 1096 (2018) ( Schutz II ).
On review, we conclude, for the reasons that follow, that defendants were not entitled to statutory immunity under ORS 471.565(1). Accordingly, this case presents no opportunity for us to address the remedy clause issue. We affirm the Court of Appeals, but on other grounds. We reverse the trial court's grant of summary judgment and remand for further proceedings.
I. FACTS AND PROCEDURAL POSTURE
A. Facts
On December 12, 2008, Keeley O'Brien invited plaintiff to leave work early and join him and other coworkers at La Costita, a nearby restaurant and bar. Plaintiff agreed. At the bar, Keeley O'Brien encouraged the coworkers to drink, teasing another coworker for attempting to **539 leave after only two beers. Plaintiff became severely intoxicated and has no further memory of that night. She later drove the wrong way down the interstate *778 and was severely injured in an auto accident.
B. Trial Court Proceedings
Plaintiff filed this civil action against La Costita, Keeley O'Brien, and O'Brien Constructors. The trial court determined that La Costita was entitled to immunity under ORS 471.565(1) and entered a limited judgment of dismissal in its favor. The Court of Appeals affirmed that judgment on appeal. Schutz v. La Costita III, Inc. , 256 Or. App. 573, 302 P.3d 460, rev. den. , 354 Or. 148, 311 P.3d 525 (2013) ( Schutz I ). We will discuss Schutz I in more detail shortly.
After the trial court dismissed La Costita, plaintiff filed an amended complaint against Keeley O'Brien and O'Brien Constructors. In the posture that this case reaches us, we assume, without deciding, that the allegations in that amended complaint state a claim for negligent injury. In her amended complaint, plaintiff alleged that Keeley O'Brien and O'Brien Constructors had purchased alcohol for her but not that they had been negligent in so doing. Instead, plaintiff alleged, in her first claim for relief, that Keeley O'Brien had been negligent in three respects:
"a) In organizing, arranging, and supervising an employee function at defendant La Costita's facility, knowing that excessive amounts of alcoholic beverages would be purchased for, served to, and consumed by the employees attending the function;
"c) In failing to warn plaintiff that excessive amounts of alcoholic beverages would be purchased for, served to, and expected to be consumed by the employees attending the function."
"a) In permitting defendant Keeley O'Brien to organize, arrange, and supervise work-related activities away from the work site at establishments where alcoholic beverages were served, such as defendant La Costita's bar and restaurant, when defendant O'Brien Constructors knew, or in the exercise of reasonable care should have known, that excessive amounts of alcoholic beverages would be consumed;
"b) In failing to adequately train defendant Keeley O'Brien in terms of proper methods of enhancing and improving work and employee relationships, and that such methods should not involve leaving work early, proceeding to establishments where alcoholic beverages would be served, purchasing excessive amounts of alcoholic beverages for employees, and encouraging employees to actively participate in those types of activities."
Both defendants moved for summary judgment.[1] Among other things, defendants asserted that, as social hosts, they, like La *779 Costita, were entitled to statutory immunity under ORS 471.565(1). That statute provides, in part:
"A patron or guest who voluntarily consumes alcoholic beverages served by a person licensed by the Oregon **541 Liquor Control Commission, a person holding a permit issued by the commission or a social host does not have a cause of action, based on statute or common law, against the person serving the alcoholic beverages, even though the alcoholic beverages are served to the patron or guest while the patron or guest is visibly intoxicated. The provisions of this subsection apply only to claims for relief based on injury, death or damages caused by intoxication and do not apply to claims for relief based on injury, death or damages caused by negligent or intentional acts other than the service of alcoholic beverages to a visibly intoxicated patron or guest."
Plaintiff argued that her claims were not barred by the statute, because they were claims for "negligent *** acts other than the service of alcoholic beverages." Plaintiff explained that she had alleged that defendants had acted negligently before she went to the bar where alcohol was served.
Alternatively, plaintiff asserted that, even if defendants were entitled to statutory immunity, the statute that granted that immunity was unconstitutional. The remedy clause of the Oregon Constitution, Article I, section 10, provides in part that "every [person] shall have remedy by due course of law" for injury to "person, property, or reputation." Plaintiff argued that if ORS 471.565(1) eliminated her right to a remedy for injury to her person, it violated the remedy clause, therefore rendering the statute invalid.
The trial court rejected plaintiff's arguments and granted summary judgment for both defendants. The court expressly concluded that both defendants were entitled to statutory immunity under ORS 471.565(1) ; the court's ruling implicitly rejected plaintiff's constitutional argument. Plaintiff appealed.
In Schutz II , the Court of Appeals agreed with the trial court's conclusion that defendants were entitled to immunity under ORS 471.565(1). In doing so, it relied on its interpretation of ORS 471.565(1) in Schutz I . Before proceeding, we offer the following brief summary of Schutz I .
**542 As noted, in Schutz I, the Court of Appeals considered the trial court's dismissal of plaintiff's claims against La Costita. In her claims against that defendant, plaintiff had alleged that it had been negligent in (1) serving her alcohol, (2) "abandoning" her by allowing her to leave the bar when in a state of acute alcohol intoxication, and (3) failing to arrange safe transportation home. Id . at 576-77, 302 P.3d 460. The Court of Appeals concluded that ORS 471.565(1) barred all three claims. The court explained:
"The second sentence of ORS 471.565(1) permits causes of action that are not caused by the service of alcoholic beverages, and there is nothing in plaintiff's complaint from which a juror could find or infer that plaintiff's injuries were caused by anything else. Put another way: Had plaintiff not voluntarily consumed alcoholic beverages, there could not possibly have been any foreseeable risk that allowing her to depart or failing to call alternative transportation would have caused her injury. Further, *** providing immunity for servers who provide alcohol to visibly intoxicated patrons, but simultaneously revoking that immunity if the servers fail to ensure the patron's safety, would effectively create an exception that swallows the rule. In sum, we conclude that ORS 471.565(1) bars all of plaintiff's negligence specifications."
The court in Schutz II applied that holding in Schutz I . It concluded that, in enacting ORS 471.565(1), the legislature had intended to "eliminate the common-law claim of a voluntarily intoxicated person-no matter what the specification of negligence, so long as the injury ultimately was caused by voluntary intoxication." 288 Or. App. at 488, 406 P.3d 66. The court reasoned that, because plaintiff's *780 injuries arose from her voluntary consumption of alcohol, defendants were entitled to statutory immunity. Id. at 484, 406 P.3d 66.
The Court of Appeals then turned to whether the legislature's grant of statutory immunity violated the remedy clause of Article I, section 10, and this court's interpretation of the clause in Horton v. OHSU , 359 Or. 168, 376 P.3d 998 (2016). Briefly, the court concluded that ORS 471.565(1) was unconstitutional because it retained certain common-law duties but denied plaintiff any remedy for breach of **543 those duties.[2] Schutz II, 288 Or. App. at 484-88, 406 P.3d 66. Further details would not be useful here; as we will explain, we conclude that defendants are not entitled to statutory immunity. Therefore, this case does not provide a platform for us to address the remedy clause part of the court's analysis.
II. ANALYSIS
On review, defendants argue that, as "social hosts," they are entitled to immunity under ORS 471.565(1). A "social host" is "one who receives guests, whether friends or associates, in a social or commercial setting, in which the host serves or directs the serving of alcohol to guests." Solberg v. Johnson , 306 Or. 484, 490, 760 P.2d 867 (1988) (footnote omitted). A "social host" can include a person who "pay[s] a monthly liquor bill to a club or ante[s] up per drink at a tavern." Id . (concluding that stepfather buying drinks for stepson in public tavern qualified as social host). Plaintiff did not respond to defendants' motion with an argument that defendants were not social hosts, and the Court of Appeals considered that status to be undisputed. See Schutz II , 288 Or. App. at 480, 406 P.3d 66 ("It is undisputed that in this case defendants were 'social hosts' within the meaning of ORS 471.565(1)."). In this court, plaintiff does not assign error to that assumption, nor does she argue that the statute does not apply because defendants do not meet the definition of "social hosts."[3] Accordingly, we too consider that fact to be **544 established for our purposes and begin with the statutory argument that plaintiff made below and renews here.
As noted, plaintiff contends that, by its terms, ORS 471.565(1) provides immunity for social hosts but only for a narrow set of negligent acts-acts involving the purchase or service of alcohol to the visibly intoxicated-and permits all other negligence claims. As we see it, the question for us is whether a defendant who fits the definition of a server or social host is immune from liability only when alleged to be acting as a server or social host or also when alleged to be acting in another role, such as property owner or employer.
*781 We begin our analysis using the now-familiar template for statutory interpretation set out in PGE v. Bureau of Labor and Industries , 317 Or. 606, 610-12, 859 P.2d 1143 (1993), and State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009). We seek to discern the legislative intent by examining the text of the statute in context and considering legislative history as pertinent. Hodges v. Oak Tree Realtors, Inc. , 363 Or. 601, 608, 426 P.3d 82 (2018).
We first quote again the text of ORS 471.565(1), for the convenience of the reader. It provides:
"A patron or guest who voluntarily consumes alcoholic beverages served by a person licensed by the Oregon Liquor Control Commission, a person holding a permit issued by the commission or a social host does not have a cause of action, based on statute or common law, against the person serving the alcoholic beverages, even though the alcoholic beverages are served to the patron or guest while the patron or guest is visibly intoxicated. The provisions of this subsection apply only to claims for relief based on injury, death or damages caused by intoxication and do not apply to claims for relief based on injury, death or damages caused **545 by negligent or intentional acts other than the service of alcoholic beverages to a visibly intoxicated patron or guest."
The statute thus consists of two sentences. The first sentence provides that a patron or guest who voluntarily consumes alcohol cannot bring an action against licensed servers or social hosts "serving * * * alcoholic beverages," even though the beverages are served to a patron or guest who is visibly intoxicated. In theory, that sentence might be read broadly to focus on the status of the parties and, thus, to bar all claims by patrons or guests who voluntarily consume alcohol against all licensed servers or social hosts. The sentence as a whole, however, suggests a narrower reading. The grant of immunity suggests a connection between described persons-licensed servers or social hosts-and their acts-the service of alcoholic beverages. That connection between status (server) and action (serving) would suggest that the immunity applies only to claims against servers or social hosts for their actions taken as servers or social hosts.
The second sentence of the statute provides additional information about the legislature's intent. The first clause of that sentence provides that the provision's immunity "appl[ies] only to " claims for relief based on injuries "caused by intoxication ." And the second clause provides that the provision's immunity does not apply to claims for relief based on injuries "caused by negligent or intentional acts other than the service of alcoholic beverages to a visibly intoxicated patron or guest." (Emphases added.)
If read in isolation, the second clause of the second sentence is straightforward: A server or social host is not immune when a claim is based on injuries caused by tortious acts "other than the service of alcoholic beverages" to a visibly intoxicated person. Read in conjunction with the first clause, however, an ambiguity appears. Reading those two clauses together, one possible reading of the second sentence is that the immunity provided for claims against servers and social hosts extends only to a limited set of claims-claims in which the plaintiff's injuries were caused, at least in part, by the plaintiff's own intoxication-but does not extend to claims in which the plaintiff's injuries also were caused by a defendant's tortious acts other than the service of alcoholic **546 beverages. A second possible reading of the second sentence is that the immunity provided for claims against servers and hosts extends to all claims in which a plaintiff's intoxication causes the plaintiff's injury, including those claims in which the plaintiff alleges that the server or social host committed a tortious act "other than the service of alcoholic beverages." As applicable here, plaintiff maintains that the former understanding is correct. She argues that her claims against defendants are viable because, although her intoxication may have been one cause of her injuries, her injuries also were caused by defendants' tortious acts in their roles as her employer and supervisor, and the statute does not bar such claims. Defendants maintain that the latter understanding is correct. They argue that, because plaintiff's voluntary intoxication *782 caused her injuries, her injuries were not caused by the defendants' tortious acts and are barred.
For several reasons, plaintiff's interpretation of the second sentence seems most plausible. First, defendants' reading assumes that there will be only one cause of a plaintiff's injuries-that the injuries will be either wholly caused by the plaintiff's intoxication or wholly caused by a server or host's tortious acts, but not both. That makes neither logical nor legal sense. Consider, for instance, the circumstance in which, on her way out of a bar, an intoxicated plaintiff falls on the bar's unsafe stairs. Logically, the plaintiff's injuries may be caused by both her intoxication and the unsafe condition of the stairs. Legally, this court has recognized that there may be more than one cause in fact of a plaintiff's injuries (see, e.g., Wright v. Turner , 354 Or. 815, 830-31, 322 P.3d 476 (2014) ), and the legislature has adopted statutes intended to apportion liability when injuries have multiple causes. ORS 31.600 (allowing plaintiff to recover proportionally from multiple parties, provided that plaintiff's fault does not exceed the combined fault of the other parties); see Towe v. Sacagawea, Inc. , 357 Or. 74, 107, 347 P.3d 766 (2015) (under comparative negligence statute, "the respective negligence of a plaintiff and one or more defendants are to be compared to determine whether and to what extent the plaintiff might nevertheless recover damages from the defendant"). Defendants' reading of the second sentence would require us to ignore that logic and law.
**547 Second, and relatedly, if we give the second sentence the meaning that defendants ascribe, then the first clause of the second sentence would trump the second: If a plaintiff's intoxication were a cause of the plaintiff's injuries, then a server or social host would obtain immunity even if the server/host committed intentional or negligent torts "other than the service of alcoholic beverages to a visibly intoxicated patron or guest." Defendants' reading would render the second clause meaningless, and, ordinarily, we read statutes to give effect to all of their provisions. See ORS 174.010 (in interpreting statute, courts should if possible adopt interpretation that "will give effect to all" provisions); Comcast Corp. v. Dept. of Rev. , 363 Or. 537, 545, 423 P.3d 706 (2018) ("In general, we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage." (Internal quotation marks and citation omitted.)).
Third, the wording of the first clause of the second sentence seems intended to narrow the circumstances in which immunity applies. The clause provides that the subsection "appl[ies] only to claims for relief based on" injuries caused by intoxication; it does not provide that the subsection applies whenever a plaintiff's injuries are caused by intoxication. (Emphasis added.) In using the wording that it did, the legislature seemed to assume that immunity would attach when a plaintiff brought a claim described in the first sentence-that is, a claim against a server or social host-and narrowed its application by providing, in the second sentence, that that immunity would apply only to those injuries that were caused by the plaintiff's intoxication.
Finally, as noted, the references to the conduct of a server or social host in the first sentence suggest a reading that provides immunity for servers or social hosts not based solely on their status as such. Interpreting the second sentence to provide servers and social hosts with immunity from all claims by patrons or guests whose injuries are caused by their intoxication would make the status and not the conduct of the servers or hosts determinative and would be inconsistent with the most plausible reading of the first sentence.
**548 Considered as a whole, the text of ORS 471.565(1) thus suggests that the statute provides immunity for claims against servers and social hosts only for their actions as servers or social hosts. The first sentence grants immunity to a licensed server or social host who acts as such. The first clause of the second sentence adds a second requirement: The plaintiff's injuries must have been caused by the plaintiff's intoxication. And the second clause of the second sentence confirms that the immunity granted by the first sentence does not extend to a claim against a server or host who is alleged to have acted *783 intentionally or negligently in performing a role other than that of server or social host. In short, the text suggests that servers or social hosts who are not sued in their capacity as servers or hosts, but rather, in some other capacity, are not entitled to immunity.
Our reading of the text is not beyond dispute, however, and we turn to the statute's context and legislative history for guidance. Context includes the Oregon case that led the legislature to adopt ORS 471.565(1). See State v. Turnidge , 359 Or. 364, 493-94, 374 P.3d 853 (2016), cert. den. , --- U.S. ----, 137 S. Ct. 665, 196 L.Ed.2d 554 (2017) (in interpreting statute, court considered as context Oregon cases that legislature had intended to overrule). In this instance, one such case bears particular attention.
**549 On review, this court held that both claims for relief were cognizable. As to the first claim for serving the plaintiff while he was visibly intoxicated, we noted that our prior cases had not been consistent about whether such a plaintiff would have a claim for relief for common-law negligence. Id . at 424, 9 P.3d 710. After discussing and reconciling those cases, we permitted the plaintiff's claim, holding that a "common-law negligence claim exists in favor of an intoxicated person who suffered injury on the premises of an establishment against the server or establishment that supplied alcohol to the injured person when the person was visibly intoxicated." Id . at 419, 9 P.3d 710.
In reaching that conclusion, this court explained that the Oregon legislature had created a system of comparative fault, under which the trier of fact would weigh the relative negligence of the server and the patron. We reasoned that a holding that the patron had no claim for injuries suffered by the patron's own drinking would resurrect the doctrine of contributory negligence, contrary to the legislative choice to abolish it. Id . at 426-27, 9 P.3d 710.
As for the plaintiff's claim of premises liability, we noted that the bar had a duty to make its premises reasonably safe in light of its invitation to patrons to come to its premises and consume alcohol. Id . at 429, 9 P.3d 710. The plaintiff had alleged that the bar knew that its patrons would drink alcohol, that " 'intoxicated patrons would have to use a lengthy set of steps to descend from the lounge,' " and that the bar knew or should have known that " 'such use of the steps by intoxicated patrons would be likely to cause injury to the patron.' " Id . (quoting complaint). Those allegations, this court explained, stated a valid claim for premises liability.
This court then added that, although the plaintiff's intoxication might have contributed to his injuries, that had no bearing on the question whether the plaintiff had stated a claim for relief. Id . As with the claim for negligence in service, the degree of fault would be decided by the trier of fact under comparative negligence principles. Id . at 429-30, 9 P.3d 710.
The bill that became ORS 471.565(1) was enacted shortly after this court's decision in Fulmer. At the 2001 **550 legislative session, the legislature enacted Senate Bill (SB) 925 (2001). Or. Laws 2001, ch. 534, § 1 (amending former ORS 30.950(1), since renumbered as ORS 471.565 ). As originally introduced, the part of SB 925 that later became ORS 471.565(1) consisted of a single sentence:
"A patron or guest who voluntarily consumes alcoholic beverages served by a person licensed by the Oregon Liquor Control *784 Commission, a person holding a permit issued by the commission or a social host does not have a cause of action against the person serving the alcoholic beverages based on common law negligence even though the alcoholic beverages are served to the patron or guest while the patron or guest is visibly intoxicated."
(Emphasis added.) A representative of the Oregon Restaurant Association explained that the association sought that provision as a reaction to Fulmer .[4] A legal analysis prepared on behalf of the association and submitted to the legislature expressed concern that Fulmer meant
"there will be claims by the intoxicated person themselves who will claim that the server or licensee served them after they were visibly intoxicated and that their intoxication led them to ignore or not appreciate any dangers inherent in walking to the restroom, negotiating steps or stairs, exiting to the outside, etc."
Exhibit A, Senate Committee on Judiciary, SB 925, Mar. 13, 2001, at 4 (legal analysis by Mills & McMillin, PC, accompanying statement by Bill Perry, Oregon Restaurant Association) (footnote omitted; emphasis added). From that original text and that statement, it appears that the Oregon Restaurant Association wanted to change one aspect of Fulmer -the court's recognition of a negligence claim **551 against the defendant bar for its role in serving the visibly intoxicated plaintiff-but not the other aspect of that case-the court's recognition of a negligence claim against the defendant bar for failing to make its premises reasonably safe for its intoxicated patrons.
Almost immediately after the original bill was introduced, the Oregon Trial Lawyers Association (OTLA) asked that the bill be amended to clarify that intent and to add what is now the second sentence of ORS 471.565(1). See Exhibit B, Senate Committee on Judiciary, SB 925, Mar. 13, 2001 (-1 amendment). The purpose of the amendment was to provide that, although servers would be immune for their actions as servers, they would not be immune for their actions as property owners. Speaking for the Oregon Restaurant Association, Bill Perry explained:
Senate Committee on Judiciary, SB 925, Mar. 13, 2001, Tape 57, Side A (statement of Bill Perry, Oregon Restaurant Association). And Dave Heynderickx of the Legislative Counsel's Office expanded:
"The -1 amendment that you have, which apparently came from the Trial Lawyers Association, basically are just addressed, as Mr. Perry indicated, towards making sure that the only thing that the amendment did was to reinstate the limitation on liability by reason of injuries you suffer by reason of your own intoxication, and not to take out the scenario where, in fact, it was defective stairs or failure to light or some of the other things that can occur."
Senate Committee on Judiciary, SB 925, Mar. 13, 2001, Tape 57, Side A (statement of Dave Heynderickx, Legislative Counsel's Office).
The legislature's decision to adopt the amendment proposed by OTLA is significant. As noted, in Fulmer, the plaintiff had become intoxicated and had made claims against **552 the defendant bar both for negligent service of alcoholic beverages and for *785 negligence in requiring intoxicated patrons to use stairs to exit. This court upheld both claims, and the statements by the drafters of SB 925 that premises liability would not be affected seem to signal an intent to preserve that aspect of our decision in Fulmer and to continue to permit a plaintiff who voluntarily became intoxicated to bring a claim against a bar for premises liability, even though the plaintiff's intoxication may have partially caused or contributed to the plaintiff's injury. Again, Perry explained that the restaurant association did not intend to immunize covered servers or social hosts from all liability, using the example of premises liability:
"It was amended in the Senate Judiciary Committee. The Oregon Trial Lawyers Association asked us to add a specific amendment to make sure of-which we thought their amendment was already addressed, but they wanted to reinforce the fact that anything-if any property, a ripped carpet, a bad handrail, a broken stair, contributed to the accident , that liability could still rest on the establishment, and we're fine with that. That is not our intent to limit any of those types of liabilities. This specifically deals with if somebody drinks alcohol on their own and hurts themselves, then that's what we're trying to address."
House Committee on Judiciary - Civil Subcommittee, SB 925, May 14, 2001, Tape 94, Side A (statement of Bill Perry, Oregon Restaurant Association) (emphasis added). That statement seems to indicate an intention to continue to hold a bar liable for its own tortious acts, other than the service of alcoholic beverages, that contribute to a patron's injuries even though the patron's own intoxication also may have contributed to those injuries.
It is true that Perry also explained the bill in terms that could be understood as precluding all claims by patrons whose injuries are caused, even in part, by their intoxication. For example, Perry told the legislature:
"What we're asking for in the bill is just simply to restate what we feel the two lower courts said was: If you drink, become intoxicated on your own accord, and hurt yourself, that you cannot seek damages from the licensee."
**553 Senate Committee on Judiciary, SB 925, Mar. 13, 2001, Tape 57, Side A (statement of Bill Perry, Oregon Restaurant Association) (emphasis added). Representative Lane Shetterly also summarized the bill in a similar fashion:
"I think what this [bill] says is * * * that if you've got somebody who * * * voluntarily consumes alcohol and then goes out and, as a consequence of their intoxication, injures themselves or causes harm to themselves , even * * * up to death, that the host, the provider, is not liable for that person's own injuries."
House Committee on Judiciary, SB 925, May 23, 2001, Tape 69, Side A (statement of Rep Shetterly) (emphasis added).
But we are hesitant to rely on those statements to the exclusion of others that explicitly discuss the factual scenario that the legislature clearly had in mind: that is, a scenario in which there are at least two potential acts that result in a patron's injuries-the patron's intoxication and the bar's tortious acts other than service of the visibly intoxicated patron. Representative Shetterly made it clear that a patron's intoxication was not intended to bar all claims that the patron might make. He explained what the legislature intended when a defendant's negligence-other than the service of alcohol-also was alleged to be a cause of a patron's injuries. He said:
"I think it's worth pointing out again that this doesn't apply *** to claims for relief based on damages or intentional acts other than the service of alcohol.
"So I guess if you've got a-somebody who's visibly intoxicated, leaves a premises, and then going out the premises falls through a defective stair and injures themselves, then the premises liability will still kick in separate from damages as a result of intoxication. "
House Committee on Judiciary, SB 925, May 23, 2001, Tape 69, Side A (statement of Rep Shetterly) (emphases added). Shetterly thus indicated that the legislature did not intend to bar all claims made by patrons or guests who became intoxicated. The legislature intended to bar such actions when brought *786 against servers or hosts for actions taken in their roles as such, but not for their action taken in a different capacity, such as failing to maintain safe premises. **554 As Shetterly explained it, the legislature intended to permit such a claim, even if the plaintiff's intoxication also contributed to the injury. Thus, the shorthand statements by Shetterly and others appear to summarize the result that will usually follow in the paradigm case: Servers acting as servers will not be liable for a patron's injuries that result from the patron's intoxication.
One final aspect of the legislative history also supports the conclusion for which the text and context argue. A reading of ORS 471.565(1) that would preclude all actions against servers and hosts by patrons or guests who become intoxicated would imply a legislative decision to readopt a more general rule of contributory negligence for those patrons and guests. See Fulmer , 330 Or. at 426, 9 P.3d 710 (explaining that any holding barring a plaintiff from bringing an action because he or she was intoxicated "would revive by court decision the doctrines of contributory fault and assumption of the risk that the legislature has abolished"). Yet the only mention of contributory negligence in the legislative history expressly disclaims any such intent. The Oregon Restaurant Association-in an exhibit submitted to the House Judiciary Civil Subcommittee after the OTLA amendment had been adopted and the bill approved by the Senate-reassured the legislature that the bill would not alter comparative negligence or resurrect contributory negligence:
"SB 925 is not a bill that changes Oregon's comparative negligence laws or revives a contributory negligence or assumption of risk standard."
Exhibit E, House Committee on Judiciary - Civil Subcommittee, SB 925, May 14, 2001 (written statement of Bill Perry, Oregon Restaurant Association).
In summary, we agree with plaintiff that ORS 471.565(1) grants immunity to licensed servers or social hosts only when patrons or guests bring claims against them in their roles as servers or hosts and only when voluntary intoxication was a cause of the alleged injuries. The statutory text is not unambiguous, but it suggests that conclusion. The statute's context and its legislative history confirm that the legislature intended to preclude claims against servers and social hosts for actions taken in their roles as **555 such, but not for their intentional or negligent acts in other roles.
Given that construction of ORS 471.565(1), we do not take issue with the result that the Court of Appeals reached in Schutz I , when it affirmed the dismissal of the claims against La Costita. Broadly speaking, plaintiff's complaint against La Costita alleged that the bar was negligent in its role as a server of alcohol. Plaintiff's first specification of negligence-that La Costita continued to serve alcohol to her while she was intoxicated-asserted a claim that the legislature certainly intended to bar. In her second and third specifications of negligence, plaintiff alleged that La Costita failed to stop her from driving and to arrange for alternative transportation. We understand those allegations as being premised on the bar's role as a server and not on its performance of another role, such as landowner. If La Costita had a duty to act affirmatively to protect plaintiff from harm, a question we do not address, that duty, as alleged, could arise only from its role in having served alcoholic beverages to plaintiff after she became visibly intoxicated. Plaintiff did not allege that La Costita played some other role that gave rise to such a duty. Accordingly, we do not dispute the Court of Appeals' conclusion in Schutz I that La Costita was entitled to immunity.
In this case we do not decide that plaintiff has a legally cognizable claim against defendants for their acts as her employer or supervisor. If she does, she will have to prove that defendants acted tortiously in taking one or more of the actions she alleges and that those acts were a cause of her injuries. Under the comparative negligence statutes, defendants' alleged negligence as an employer or supervisor, if any, may be compared with plaintiff's own negligence and other relevant negligent acts. See ORS 31.600 (setting out method). In the end, plaintiff may not prove that defendants were liable or obtain damages from them. But that does not mean that defendants are immune from suit. We conclude that ORS 471.565(1) does not bar plaintiff's claims for tortious acts other than acts taken in their role as social hosts, including the acts that she alleges in her amended complaint.[6]
III. CONCLUSION
We conclude that the Court of Appeals erred in its holding that ORS 471.565(1) barred plaintiff's claims against defendants. Nevertheless, its ultimate determination was **557 correct: the trial court's grant of summary judgment should be reversed.
The decision of the Court of Appeals is affirmed on other grounds. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.
Kistler, J., retired December 31, 2018, and did not participate in the decision of this case.
Earlier in the proceedings, defendant O'Brien Constructors also had moved to dismiss all claims against it on the ground that they were barred by the exclusive remedy provision of Oregon's workers' compensation laws, ORS 656.018(1)(a) (making workers' compensation remedies exclusive for all injuries "arising out of and in the course of employment"). The trial court denied that motion to dismiss. Relying on this court's decision in Krushwitz v. McDonald's Restaurants , 323 Or. 520, 919 P.2d 465 (1996), the trial court concluded that because plaintiff had suffered her injuries on her way home from the bar, those injuries had not occurred "in the course of [her] employment." O'Brien Constructors did not appeal that determination, and the question is not before us on review.
It is not entirely clear which duties the Court of Appeals had in mind. At one point, the court focused on plaintiff's allegations of negligence. Schutz II, 288 Or. App. at 485-86, 406 P.3d 66 (concluding that plaintiff had stated valid common-law claims against Keeley O'Brien for negligence in organizing and pressuring plaintiff to attend event, and against O'Brien Constructors for vicarious liability and negligence in training and supervising Keeley O'Brien). Later, however, the court shifted focus to allegations of negligence that plaintiff did not invoke as to these defendants-negligence in the service of alcoholic beverages and the common-law duty of a server not to provide alcohol to a visibly intoxicated person. Id . at 487, 406 P.3d 66 (explaining that ORS 471.565(1) retained common-law duty of a server not to provide alcohol to a visibly intoxicated person, but removed any remedy for that breach).
Regardless, the current pleadings seem to indicate that defendants would qualify as social hosts. As to defendant Keeley O'Brien, the amended complaint alleges:
"While at La Costita's establishment, *** defendant Keeley O'Brien, acting within the ongoing course and scope of his employment and/or agency relationship with defendant O'Brien Constructors, purchased numerous alcoholic beverages for plaintiff. These alcoholic beverages were served by employees of La Costita."
The motion for summary judgment filed by O'Brien Constructors and joined in by Keeley O'Brien does not dispute that Keeley O'Brien paid for plaintiff's drinks. Because a social host includes a person who either "pay[s] a monthly liquor bill to a club or ante[s] up per drink at a tavern," plaintiff may have accepted defendants' argument that defendants were "receiv[ing] guests" "in a *** commercial setting" in which they "direct[ed] the serving of alcohol to guests," and therefore qualified as social hosts. Solberg , 306 Or. at 490, 760 P.2d 867.
The association was also reacting to this court's decision in Grady v. Cedar Side Inn, Inc ., 330 Or. 42, 997 P.2d 197 (2000), where this court had concluded that a passenger in a motor vehicle could bring a cause of action against the driver, even though the passenger had participated in the driver's intoxication by buying the driver alcohol. See Exhibit A, Senate Committee on Judiciary, SB 925, Mar. 13, 2001 (legal analysis by Mills & McMillin, PC, accompanying statement by Bill Perry, Oregon Restaurant Association). The association's concerns regarding that case were addressed in a different part of the bill that is now codified at ORS 471.565(2) (plaintiff cannot recover from host or server absent showing that plaintiff "did not substantially contribute to the intoxication of the patron or guest"). Accordingly, it is not relevant to our opinion.
One allegation that may cross the line is plaintiff's allegation that defendant Keeley O'Brien was negligent in "supervising an employee function at defendant La Costita's facility." Because defendants sought summary judgment on the basis that they were immune from plaintiff's claims in their entirety, we do not address whether defendants may be immune from that allegation of negligence in particular.
The Court of Appeals noted that the trial court had not reached defendants' arguments that they were entitled to summary judgment based on a lack of evidence that would support plaintiff's claims. See Schutz II , 288 Or. App. at 488, 406 P.3d 66 (so noting). The Court of Appeals added that the trial court would have the opportunity to consider that question on remand, and we concur.